Dillon, J..
But two questions are presented in this case:
First, as to whether or not the assessment upon the plaintiff’s lots for the improvement of West State street, this city, specially benefited the said lots to an amount equal to the assessment which was thereafter levied upon said lots, and, if so, whether these special benefits thus conferred were such as were in addition to the benefits common to the general public. My *262 conclusion is that the plaintiffs have not established their case on this issue, and the finding must be in favor of the defendants.
■ Second. A new question, not only in this court but probably in all the courts of the state, is raised as to the relationship existing between the city and these property owners with reference to the interest which the property owners are compelled to pay, to-wit, 6 per cent., and the interest which the city itself was paying upon part of the bonds issued for the street, to-wit, 4% per cent.
The testimony of Mr. Gemuender in this case shows that the city of Columbus, acting under the act of March 17, 1893 (90 O. L., 100), refunded about $600,000 worth of 6 per cent, bonds outstanding for a new issue of 4% per" cent, bonds due in 1907. The assessment in the case at bar provides for the entire payment in annual installments, the final installment to end in 1911 and the installments to bear interest at 6 per cent., the option having been given the property owners, however, to pay the entire amount off at any time. The city had, at that time outstanding over $3,000,000 of bonds which had previously been issued for the improvement of various streets in this city, and endeavored to refund as many as possible of these bonds for a new issue at 4%-per cent. And as above stated, it succeeded in getting $600,000 of these old bonds surrendered for the new issue. A certain percentage of this new $600,000 had been issued in lieu of the original 6 per cent, bonds for the street involved in this case.
I have not the benefit of the research and argument which counsel doubtless on further time and upon further investigation will be able to give this point.' The. question involves the fundamental relations which exist between the city on the one hand and the property holders on the other. If the city of Columbus when it advances the money to pay for a street is acting solely and exclusively as a trustee for the property owners, then it naturally follows as such trustee that in the absence of any intervening facts, it is bound to account strictly to the property owners .for every cent which it collects from it, and as a result of such a relation it would follow that the property *263 owners as a eestuis que trustent would be bound to reimburse the city for all losses which the city might have by reason of failure of property to pay the full assessments or by reason of the increased rate of interest which it might afterwards have to pay, or by reason of the removal of a part of the assessment by legal proceedings from any particular property.
In the limited time at my disposal, I am not able to state that this is the strict relation existing. The owner of the bond 'has no right or recourse against the individual lot owners. In other words, it 'has no right to go back of the so-called trustee, the city of Columbus, and demand that the real parties in interest be compelled to pay these bonds. On the other hand, it is clear that the obligation is one strictly and exclusively between the city of Columbus and the persons from whom it has borrowed money. It is within the power of these bondholders, if" they desire, to donate’ to the city not only a lower rate of interest, but, as has been done I believe in one case, the party may donate by will all of his bonds to the city, and the benefit is that of the city alone. The city it might well be claimed can not speculate upon the property owners, nor commit any such act as would be either constructive or actual fraud upon them, nor use the property owners for the purpose of private gain, but the incidental benefits or losses which must result in the ordinary transactions of good business between the city and its bondsmen must accrue to or fall upon the city.
The property owner is not required to pay the city 6 per cent, interest on the assessment. They may, if they can get a better rate of interest elsewhere, pay the street assessments off; in full, and by that act thereby compel the city of Columbus to continue to pay interest to its bondholders, however unwilling it may be to do so. In other words, if, after issuing a series of bonds for ten years for the improvement of a street, all the property owners would pay at once- the full amount of the assessment, the city of Columbus would be compelled to carry that money whether it had any use for it or not until the time limit stated in the bonds, as they can not force the-m to take the money beforehand. In other words, the relation between *264 the city of 'Columbus and the bondholders is one thing and the- relation of the city to the property owners is another.
George B. Olcey and F. A. Davis, for plaintiff.
J. M. Blotter, for defendants. •
If the city 'had sufficient money in its treasury lying idle it might make these improvements under a law authorizing the same, and issue no bonds at all, and pay, therefore, no interest at all, and yet I can conceive how the act would be perfectly valid which would require property owners to pay the legal rate of interest upon their deferred payments. It is merely a form of accommodation to the property owners and not a matter of right on their part to 'have time in which to pay it.
I have not considered whether or not in case this question should be properly decided, it should in the manner attempted to be raised in this case, but have given my opinion on it as above stated.
The judgment, therefore, in this ease will be in favor of the defendant. Exceptions will be noted for the plaintiffs and appeal bond fixed at $100.

 Affirmed by the Circuit Court, 6 C. C.—N. S., 401.